UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| OMAR TERRELL TAYLOR, | Case No. 3:08-cv-00401-RCJ-VPC |
| Petitioner, | ORDER |
| v. | |
| E.K. MCDANIEL, et al., | |
| Respondents. | |

This habeas matter under 28 U.S.C. § 2254 comes before the court on respondents' motion to dismiss petitioner Omar Terrell Taylor's counseled first amended petition as untimely (ECF No. 66).  Taylor opposed (ECF No. 71), and respondents replied (ECF No. 73).  As discussed below, this petition must be dismissed as untimely.

I.      **Background**

On June 17, 1997, Taylor pleaded guilty pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970) in a written plea agreement to count I:  first-degree murder and count II: manslaughter (first amended petition, exhibit 9).[1]  The state district court sentenced him to a term of life with the possibility of parole and a concurrent term of twenty-six to one hundred twenty months, and judgment of conviction was entered on September 2, 1997.  Exh. 10.

Taylor did not file a direct appeal.  Over six years later, on November 3, 2003, he filed his first state postconviction petition.  Exh. 15.  On August 19, 2004, the Nevada

---

[1] Unless otherwise noted, exhibits referenced in this order are exhibits to petitioner's first amended petition (ECF No. 12) and opposition to first motion to dismiss (ECF No. 32) and are found at ECF Nos. 13, 33-41, and 61.

Supreme Court affirmed the denial of the petition, and remittitur issued on September 14, 2004. Exhs. 21, 23. On July 18, 2007, Taylor filed his second state postconviction petition. Exh. 25. On April 18, 2008, the Nevada Supreme Court affirmed the denial of the petition, and remittitur issued on May 13, 2008. Exhs. 34, 36.

Taylor dispatched his federal habeas petition for mailing on July 14, 2008 (ECF No. 6). This court appointed counsel, and counsel filed a first amended petition on July 31, 2009 (ECF No. 12). Respondents have moved to dismiss the petition as time-barred (ECF No. 66).

II.   **Legal Standards**

The Antiterrorism and Effective Death Penalty Act (AEDPA) went into effect on April 24, 1996 and imposes a one-year statute of limitations on the filing of federal habeas corpus petitions. 28 U.S.C. § 2244(d). The one-year time limitation can run from the date on which a petitioner's judgment became final by conclusion of direct review, or the expiration of the time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A). Further, a properly filed petition for state postconviction relief can toll the period of limitations. 28 U.S.C. § 2244(d)(2).

A petitioner may be entitled to equitable tolling if he can show "'(1) that he has been pursuing his right diligently, and that (2) some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2009)(quoting prior authority). Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)). The petitioner ultimately has the burden of proof on this "extraordinary exclusion." 292 F.3d at 1065. He accordingly must demonstrate a causal relationship between the extraordinary circumstance and the lateness of his filing. *E.g., Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003).

Ignorance of the one-year statute of limitations does not constitute an extraordinary circumstance that prevents a prisoner from making a timely filing.  *See Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) ("a *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling").

With respect to equitable tolling due to mental impairment, the Ninth Circuit has set forth a two-part test:

> (1) First, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control . . . by demonstrating the impairment was so severe that either
>
> (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
>
> (b) petitioner's mental state rendered him unable to personally prepare a habeas petition and effectuate its filing.
>
> (2) Second, the petitioner must show diligence in pursuing the claims to the extent that he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance . . . .

*Bills v. Clark*, 628 F.3d at 1099-1100 (9th Cir. 2010) (emphasis in original)(footnotes omitted); *see also id.* at 1100-01.

In *Forbess v. Franke*, the Ninth Circuit concluded that a petitioner had demonstrated that his severe and unique mental illness made it impossible for him to timely file his federal petition.  749 F.3d 837, 841-842 (9th Cir. 2014).  There, the court agreed with the district court that Forbess satisfied the first *Bills* prong because he showed that his mental illness was "so severe that [he was] unable . . . to understand the need to timely file."  *Bills*, 628 F.3d at 1093.  The Ninth Circuit observed that the record demonstrated Forbess's extensive history of severe mental illness and recounted the following findings of fact:

> Petitioner believed he was working undercover for the FBI, and his trial was a "sham" orchestrated to lure his ex-wife out of hiding and arrest her

3

for being part of an extensive drug distribution operation. Petitioner's claim that his delusions persisted from the time of his trial to the expiration of the limitations period is supported by the psychological evaluations of Dr. Fickle, Dr. McDonald, and Dr. Melnick, and by the mental health records. During the relevant time period, Petitioner genuinely believed the FBI would release him once they arrested his ex-wife. As such, he was incapable of rationally understanding the necessity of filing a timely habeas petition.

*Forbess*, 749 F.3d at 840. *Compare Orthel v. Yates*, 795 F.3d 935, 939 (9th Cir. 2015) ("Although Orthel grappled periodically with significant mental health issues during his incarceration, the voluminous medical and prison records show it was not unreasonable for the district court to determine that Orthel was capable of understanding the need to timely file and effectuating a filing . . . . the entire eleven-year period (between the date on which the statute of limitations began to run and the date on which Orthel filed his petition) contained significant spans of time in which Orthel participated productively in [correspondence courses and prison programming]").

III.    **Instant Petition**

Taylor sets forth three grounds for relief in the amended petition.  He contends that (1) his trial counsel rendered ineffective assistance in violation of his Sixth and Fourteenth Amendment rights because they failed to adequately investigate his case and prepare a defense; (2) he did not enter his Alford plea knowingly, intelligently, or voluntarily in violation of his Fifth and Fourteenth Amendment rights to due process because he did not understand the consequences of his plea and he was under the influence of medication; and (3) trial counsel rendered ineffective assistance in violation of his Sixth and Fourteenth rights when they induced Taylor to enter a plea that was not knowing, voluntary and intelligent (ECF No. 12, pp. 5-10).

The parties do not dispute that the AEDPA one-year statute of limitations expired nearly six years before Taylor filed his first state postconviction petition, which was the first action he took in his case after the entry of the judgment of conviction (ECF Nos.

12, 66, 71).[2]  Taylor did not submit his federal petition for filing until July 14, 2008 (ECF No. 6).  This federal petition is, therefore, time-barred, unless Taylor is entitled to equitable tolling of the statute of limitations.

Taylor argues that he is entitled to equitable tolling of all of the time from his judgment of conviction up until he filed his initial federal petition in this case (ECF No. 71, pp. 4-17; *see also* ECF No. 32).  Thus, the time period at issue is from about October 1997 to July 2008.  Taylor relies heavily on a neuropsychological assessment that Dr. David Schmidt completed in February 2010.  Exh. 41.  Schmidt concluded that Taylor's chronic schizophrenia and cognitive impairments have negatively affected his functioning and problem-solving abilities.  Schmidt stated that the two disorders "have made and continue to make it very difficult for [Taylor] to understand or weigh the importance of any deadlines or legal factors in his case." *Id.* at 17.  Schmidt also stated that "Had [Taylor's] symptoms been better controlled, his thinking would have been clearer and more logical.  The failure to recognize and appropriately treat his continuing psychological problems made it all but impossible for him to take the appropriate steps to file and follow through with his appeal." *Id.*

Taylor provides over one thousand pages of his Nevada Department of Corrections medical records.  Exh. 40.[3]  They reflect that he suffers from schizophrenia, auditory hallucinations, depression and serious mood swings.  On several occasions he was placed in the mental health unit (MHU), and in some instances he was placed in MHU seclusion (Exh. 40, ECF No. 33-2, p. 4-5:  9/19/97 placed in MHU seclusion for suicidal thoughts; p. 11: 11/21/97 placed in MHU for protection of self/other inmates/staff; p. 16: 01/08/98 placed in MHU for suicide plans; p. 20: 02/10/98 placed in MHU seclusion

---

[2] Taylor filed a motion to discharge attorney of record on March 30, 2001 and a motion for transcripts at state expense on May 5, 2003 before he filed his first state postconviction petition on November 3, 2003. Exhs. 11, 12, 15.
[3] The court notes that the manner in which Exhibit 40 was filed and cited to by petitioner made it onerous and time-consuming to locate the citations within already difficult to decipher medical records. Voluminous records should be divided into separate exhibits, each with its own distinct exhibit number and pagination in order to facilitate review.  The court includes both the exhibit number and ECF number in this order.

because he reported hearing voices telling him to kill himself; Exh. 40-1, ECF No. 34, p. 4: 09/04/98 admitted to MHU as a threat to self; p. 21 07/20/99 placed in MHU as suicide risk; Exh. 40-C, ECF No. 34-2, p. 10: 06/2000 moved back to MHU for chronic mood swings; Exh 40, Pt. 1-D, ECF No. 35, pp. 132, 136: 09/02 placed in MHU strip cell for reported overdose; Exh. 40, Pt. 1-F, ECF NO. 36, p. 181: 11/06 placed in MHU for suicide attempt).  He attempted suicide on three occasions, in 2001, 2002 and 2006 (ECF No. 32, p. 5; *see, e.g.*, Exh. 40, Pt. 1-D, ECF No. 35, p. 110, 132, 136; Exh. 40, Pt. 1-F, ECF No. 36, p. 181).

NDOC medical personnel have treated Taylor with many different medications and in different combinations and dosages.  *See generally* Exh. 40; *see also* Exh. 41, pp. 7-10.  He has had difficulty with medication compliance.  *See, e.g.*, Exh. 40-1, ECF No. 34, p. 39; Exh. 40, Pt. C, ECF No. 34-2, p. 6; Exh. 40-1E, ECF No. 35-2, p.158.

The records also reflect that Taylor took the GED exam and failed by one point (Exh. 40-1, ECF No. 34, pp. 7-9), he worked as a porter (*id.* at 3), as a yard laborer (*id.* at 5; Exh. 40, Pt. 1-E, p. 151-155), and in culinary (Exh. 40, Pt. 1-E, p. 166).  Particularly after the first couple of years of his incarceration, the records suggest that Taylor became more stable overall.  Throughout his incarceration, he has reported some mood swings and occasions where he heard voices.  At the same time, Taylor was regularly oriented to time and place.  He discussed with medical staff fairly sophisticated treatment plans, such as the fact that he used physical exercise including lifting weights and playing handball to help deal with his anger, that he was learning to identify the feelings leading up to outbursts of anger and to identify outside stressors, avoiding yard drugs and gang activity, and nutrition strategies to aid weight loss.  Exh. 40-1, ECF No. 34, pp. 13-16.  *See also* Exh. 40, ECF No. 33-2, pp. 8-10, 12, 22; Exh. 40-1, ECF No. 34, pp. 6-7, 42; Exh. 40-1E, ECF No. 35-2, pp. 151-155.  One medical provider opined that Taylor has a great sense of humor and should use it more.  Exh. 40-1E, ECF No. 35-2, p. 169.  Taylor has told medical staff of his plans for when he is released and has

discussed rehearsing appropriate ways to respond if he is provoked by another inmate or staff. *Id.* Taylor has indicated that he does not know how to express his feelings and shared his fear that doing so would make him appear weak and easy to take advantage of. Exh. 40-1, ECF No. 34, p. 13.

A recurrent theme in his NDOC records is that medical staff observes that Taylor suffers from real mental illness, but is also manipulative and attention-seeking and frequently seems much more depressed around health professionals than with his peers. Exh. 40, ECF No. 33-2, pp. 4-5, 13-15; Exh. 40-1, ECF No. 34, pp. 9, 12, 29; Exh. 40, Pt. C, ECF No. 34-2, p. 11; Exh. 40-1E, ECF No. 35-2, pp. 147, 165. Taylor also told medical providers after one purported suicide attempt that he was "just pissed that he [had been] moved." Exh. 40, p. 11. He told medical personnel at times that he wanted to be placed in MHU or the extended care unit (ECU) not for mental health considerations but to avoid gang activity. Exh. 40-1E, ECF No. 35-2, p. 146; *see also* Exh. 40, ECF No. 33-2, pp. 4-5; Exh. 40-1, ECF No. 34, p. 21.

Taylor indicated that he refused his medication at times because of the attendant weight gain. Other times he explained that he is a "shot caller" on the yard and did not take his medications on days he went out on the yard out of concern about the stigma of being on psychiatric medications. Exh. 40-1E, ECF No. 35—2, pp. 166, 179.

Finally, his medical records also indicate that Taylor at times referenced the status of his own legal proceedings or reflected an awareness of legal remedies in general. Exh. 40, ECF No. 33-2, pp. 10, 29, 33, 35, 41; Exh. 40-1, ECF No. 34, pp. 9, 31, 41, 42; Exh. 40-1E, pp. 151-155, 169.

The court has carefully reviewed all the briefing as well as the medical records in this case. The record reflects that petitioner has significant mental health issues and has been on extensive regimens of medications throughout his incarceration with the NDOC. However, nothing in the records provided—aside from Schmidt's conclusions when he assessed Taylor in 2010--demonstrates that Taylor's mental impairment was

so severe that he was unable to rationally or factually understand the need to timely file, or unable to personally prepare and file a habeas petition and that it caused it to be impossible for him to meet the filing deadline.  And, in fact, Taylor's progress notes tend to reflect that, while suffering mental illness, he was generally not incapacitated or incapable of functioning in daily life.[4]  The balance of the record indicates that Taylor's situation more closely resembles that of the petitioner in *Orthel* and differs significantly from *Forbess*, where that petitioner labored under severe and persistent delusions that he was working undercover for the FBI.

The court further notes that Taylor filed two state postconviction habeas petitions.  In the first state petition, he did ask that counsel be appointed because he was on psychotropic medications and had trouble concentrating.  Exh. 15.  While the petition was untimely and not a model of clarity, Taylor set forth discernible claims—mainly that his sentence is illegal because he did not commit premeditated murder and that his plea counsel was ineffective for failing to move to withdraw the guilty plea.  *Id.*  The Nevada Supreme Court denied the petition, and remittitur issued on September 14, 2004.  Exhs. 21, 23.  Nearly three years later, on July 18, 2007, Taylor filed his second state postconviction petition claiming ineffective assistance of plea counsel.  Exh. 25. Thereafter, he initiated these federal proceedings in July 2008.

The court concludes that petitioner has not met his burden to demonstrate that extraordinary circumstances beyond his control–that either he was unable rationally or factually to personally understand the need to timely file, or his mental state rendered him unable to personally prepare a habeas petition and effectuate its filing–and that he diligently pursued the claims to the extent that he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the

---

[4] Additionally, while not dispositive, the court notes that two defense experts evaluated Taylor prior to the entry of his plea and determined that he was competent to stand trial and aid in his own defense.  Exhs. 38, 39.

circumstances.  Accordingly, petitioner has not met his burden under the two-part test laid out in *Bills.*  Taylor's petition shall be dismissed as time-barred.

IV.   **Certificate of Appealability**

In order to proceed with an appeal, petitioner must receive a certificate of appealability.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski*, 435 F.3d 946, 950-51 (9th Cir. 2006); *see also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.*; 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.* (quoting *Slack*, 529 U.S. at 484).  In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further.  *Id.*  Pursuant to Rule 11(a) of the Rules Governing Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed.  This court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that the question of whether petitioner is entitled to equitable tolling of the statute of limitations due to petitioner's mental health issues meets the standard. The court will therefore grant petitioner a certificate of appealability on that issue.

**IT IS THEREFORE ORDERED** that respondents' motion to dismiss the first amended petition (ECF No. 66) is **GRANTED**.  The petition is **DISMISSED** as untimely.

**IT IS FURTHER ORDERED** that a certificate of appealability is **GRANTED** on the issue of whether petitioner is entitled to equitable tolling of the statute of limitations.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly and close this case.

DATED: 9 March 2016.

ROBERT C. JONES
UNITED STATES DISTRICT JUDGE